IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

WESTFIELD INSURANCE COMPANY,

    Plaintiff,

v.                                                    Civil Action No. 3:17-cv-4602

BPI, INC., JOHN C. WELLS, KRISTEN WELLS,
BRIAN R. RITZ and KARIN RITZ,

    Defendants.

## WESTFIELD INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY RELIEF

Comes now Westfield Insurance Company ("Westfield"), pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and W.Va. Code § 55-13-1 et seq., and for its Complaint for Declaratory Relief states:

### Jurisdiction

1.    Westfield is an Ohio corporation, with its principal place of business in Westfield Center, Ohio.

2.    BPI, Inc. is a West Virginia corporation with its principal place of business in Putnam County, West Virginia.

3.    John C. Wells is a West Virginia resident.

4.    Kristen Wells is a West Virginia resident.

5.    Brian R. Ritz is a West Virginia resident.

6.    Karin Ritz is a West Virginia resident.

7.    The events giving rise to this Complaint for Declaratory Relief occurred in Putnam County, West Virginia.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2201, based upon complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000.

## Factual Background

9. On February 2, 2017, Brian R. Ritz and Karin Ritz filed suit in Putnam County, West Virginia, against BPI, Inc., John C. Wells and Kristen Wells. The Ritzes pleaded that on May 26, 2016 they purchased a home from the Wells for $327,000. The Ritzes identify Defendant BPI, Inc. as the general contractor for the house.

10. In the Ritz complaint, appended here as Exhibit 1, the Ritzes allege that John Wells assured them that there were no material defects in the property, and that he and defendant BPI Inc. would warrant the property. The Ritzes allege, and the Wells and BPI admit in their answer, that John Wells assured them that BPI had followed if not exceeded industry building standards in the construction of the home. The Wells/BPI answer is appended here as Exhibit 2.

11. The Ritzes allege that they have discovered material defects to the property, "including substantial structural defects, framing defects, water intrusion, ventilation, foundation issues and electrical and plumbing issues". Exhibit 1, Complaint, ¶9.

12. Subsequent to the purchase, the Ritzes requested repairs, and they assert that the Wells made certain promises, but Defendants[1] never performed the repairs. They allege that Defendants knew of the defects and "refused and/or failed" to disclose them. Ex. 1, ¶13.

13. The complaint includes claims for breach of contract, fraud, negligence, rescission and civil conspiracy.

---

[1] The Ritzes do not differentiate among the named defendants in their suit in describing the offending conduct, and they plead all counts of the complaint against the named defendants collectively.

14. For breach of contract, the Ritzes claim that Defendants contracted to sell the house and to warrant the construction and lack of material defects.[2] They also claim breach of the implied warranty of habitability inherent in the contract.

15. For fraud, the Ritzes allege that all Defendants had knowledge of latent defects in the property and failed to disclose them, and knowingly concealed them. The Ritzes claim punitive damages.

16. For negligence, the Ritzes allege that Defendants breached a duty to exercise reasonable care and skill in the construction of the house.

17. In the fourth cause of action, rescission, the Ritzes seek repayment of the purchase price of the home.

18. For the fifth cause of action, civil conspiracy, the Ritzes allege that Defendants conspired to misrepresent the condition of the property.

19. The Ritzes do not itemize compensatory damages, but rather generally demand compensatory damages and allege, "The necessary repairs and latent defects in the property are so great that the cost of the same exceeds the purchase price of the Property." Complaint, ¶12.

20. The Wells and BPI, Inc. tendered defense of the suit to Westfield. Westfield undertook the defense under reservation of rights to withdraw the defense and decline coverage, for the reasons expressed below.

## The Westfield Policies

21. Westfield issued policy TRA 0168440 to named insured BPI, Inc. for the period January 1/ 2016 to January 1, 2017. In pertinent part, the policy is appended to this complaint as Exhibit 3.

---

[2] The Ritzes did not append the contract to the complaint. They attached the deed, evidencing transfer by John and Kristen Wells to Brian and Karin Ritz.


22. The policy includes commercial general liability and umbrella coverage. The policy covers liability for property damage caused by an "occurrence". The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions…"

23. The policy provides that the words "you" and "your" refer to the Named Insured shown in the declarations, and any other person qualifying as a Named Insured under this policy. (Ex. 2, form CG00010413, p. 1 of 16.). "You" and "your" refer only to BPI, Inc.

24. The policy defines "who is an insured". BPI as a corporation is insured; its executive officers and directors (defined in the policy) are insureds, but only with respect to their duties as BPI's officers or directors. "Volunteer workers", a defined term, are insureds only while performing duties relating to the conduct of BPI's business. "Employees", also a defined term, are insured only for acts within the scope of their employment by BPI or while performing duties related to the conduct of BPI's business. The policy further provides that no employee or volunteer worker is an insured for

> "Property damage" to property:
> (a) Owned, occupied or used by;
> (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;
> You, any of your "employees, "volunteer workers"…

**The Commercial General Liability (CGL) Policy**

25. The CGL policy applies to "property damage" only if the damage is caused by an "occurrence".

26. The CGL policy includes a number of exclusions applicable to property damage for work performed by a contractor, including Exclusions j, k (Damage to your Product), and l (Damage to your Work). The pertinent exclusions and definitions follow.

 **a.**   **Expected Or Intended Injury**

  Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury" resulting from the use of reasonable force to protect persons or property.

 **j.**   **Damage to Property**

  (2)   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

  (6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

  Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

  Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

 **k.**   **Damage To Your Product**

  "Property damage" to "your product" arising out of it or any part of it.

 **l.**   **Damage To Your Work**

  "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

  This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policy defines the following pertinent terms:

 13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

 16.   "Products-completed operations hazard":

  **b.**   Does not include "bodily injury" or "property damage" arising out of:...

   (3)   Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products – completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

*****

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;"

22. "Your work"

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

27. The policy includes an "Artisan Contractors" endorsement. That endorsement reiterates that exclusion l, the exclusion of coverage for "property damage to your work arising out of it and included in the products-completed operations hazard" does not apply "if the damaged work or the work out of which the damage arises was performed on you (sic) behalf by a subcontractor. This exclusion only applies to that particular part of your work out of which the damage arises."

28. By endorsement CG 21 86 12 04, , the policy excludes coverage for property damage "arising out of, caused by, or attributable to, whether in whole or in part", the application, etc. of any "exterior insulation and finish system". The endorsement defines this term.

**The Umbrella Policy**

29. Exclusions n, Damage to Your Product, and o, Damage to Your Work, are identical to the corresponding CGL policy exclusions.

30. The policy includes the following pertinent exclusions:

**m.    Damage To Property**

****

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises.

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

31. The Ritzes' claim for breach of contract includes allegations that "Defendants" had a duty to disclose material and latent defects of the property, and failed to disclose them. Under West Virginia law, vendors' alleged failure to disclose defects in the property when selling a home is not an "occurrence".

32. The Ritzes' claims of fraud and civil conspiracy rest on assertions that Defendants knew of the defects, took unspecified steps to conceal the defects and misrepresented the condition of the property to them. These claims do not plead an "occurrence", and the policies do not cover any damages that may be awarded for those claims.

33. The policy excludes coverage for property damage "which is "expected or intended from the standpoint of the insured". There is no coverage under the CGL or umbrella policies for damages, including punitive damages, awarded for fraud or civil conspiracy.

34. The Ritzes' claim for rescission and repayment of the purchase price does not assert a claim for "property damage" within the policies' coverage—i.e., physical injury to the property.

35. Because the house was owned and occupied by John (and Kristen) Wells, under Exclusion j there may be no coverage for "property damage" to the house.

36. Exclusion l bars coverage for damages arising from John Wells' alleged warranties as president of BPI that there were no material defects in the property and that BPI had exceeded industry building standards in building the house.

37. Exclusion l bars coverage for property damage to the house other than damage to work performed by subcontractors.

**The Homeowners Policy**

38. Westfield issued policy No. WNP 7970225 to John C. and Kristen N. Wells for the period December 9, 2015 to December 9, 2016. In pertinent part, the policy is appended to this Complaint as Exhibit 4.

39. The policy issued to John C. and Kristen N. Wells covers liability for property damage caused by an "occurrence". The limit of coverage for personal liability is $500,000 each occurrence.

40. Several exclusions in the policy may apply to the damages Brian and Karin Ritz claim in their suit.

### Coverage E – Personal Liability And Coverage F – Medical Payments to Others[3]

Coverage E and F do not apply to the following

**1. Expected or Intended Injury**

*Bodily injury* or *property damage* which is expected or intended by an *insured* even if the resulting *bodily injury* or *property damage:*

    **a.** Is of a different kind, quality or degree than initially expected or intended; or

    **b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion **E.1.** does not apply to *bodily injury* resulting from the use of reasonable force by an *insured* to protect persons or property…

**2. Business**

    **a.** *Bodily injury* or *property damage* arising out of or in connection with a *business* conducted from an *insured location* or engaged in by an *insured,* whether or not the *business* is owned or operated by an *insured* or employs an *insured.*

---

[3] The Ritz complaint does not implicate medical payments coverage.

    This exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the *business*.

  **3.**  **Professional Services**

    *Bodily injury* or *property damage* arising out of the rendering of or failure to render professional services.

Coverage **E** does not apply to:

**1.**  Liability:

            \*\*\*\*

  a.  Under any contract or agreement entered into by an *insured*. However, this exclusion does not apply to written contracts:

  **(1)**  That directly relate to the ownership, maintenance or use of an *insured location*; or

  **(2)**  Where the liability of others is assumed by you prior to an *occurrence*;

  Unless excluded in **F.1.a.** above or elsewhere in this policy;

**2.**  Property damage to property owned by the insured…

**7.**  Punitive and Exemplary Damages.

The policy defines "business" in pertinent part as

a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis.
"
b. Any other activity engaged in for money or other compensation, except the following:

  (1) One or more activities, not described in (2) through (4) below, for which no insured receives no more than $2,000 in total compensation for the 12 months before the beginning of the policy period…

Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. Bodily injury; or b. Property damage."

"Property damage" means physical injury to, or destruction of, or loss of use of tangible property.

41. The Ritzes' claim for breach of contract includes allegations that "Defendants" had a duty to disclose material and latent defects of the property, and failed to disclose them. Under West Virginia law, vendors' alleged failure to disclose defects in the property when selling their home is not an "occurrence" within the meaning of a homeowner's policy.

42. The Ritzes' claims of fraud and civil conspiracy rest on assertions that Defendants knew of the defects, took unspecified steps to conceal the defects and misrepresented the condition of the Property to them. These claims do not plead an "occurrence", and the homeowner's policy does not cover any damages that may be awarded for those claims.

43. The policy here excludes coverage for property damage "which is "expected or intended from the standpoint of the insured". Even if the claims for fraud and conspiracy were found to plead an "occurrence", under this exclusion there would be no coverage under the policy for damages awarded for fraud or civil conspiracy.

44. The Ritzes' claim for rescission and repayment of the purchase price does not assert a claim for "property damage" within the policy's coverage—i.e., physical injury to the property. Therefore, the policy does not cover this claim.

45. Because the house Brian and Karin Ritz bought was owned by John and Kristen Wells, under Exclusion E.2 there may be no personal liability coverage for "property damage" to the house.

46. The policy excludes coverage for punitive damages.

47. The policy's business pursuits exclusion applies to property damage "arising out of or in connection with a business…engaged in by an insured". The plain meaning of this language is that the exclusion applies to both John and Kristen Wells, even if only John was engaged in the business of BPI, Inc. in building the home, securing subcontractors' services, etc.

If the damages claimed by Brian and Karin Ritz arose out of or in connection with the business of BPI, then there would be no personal liability coverage available for those claims for John or Kristen Wells.

48. An actual case or controversy exists among the parties to this action.

WHEREFORE, Westfield asks that the Court grant declaratory judgment to Westfield as follows:

> Declare that the Westfield policy issued to BPI, Inc. does not require Westfield to defend BPI, Inc. or John Wells in the Ritz suit, and does not provide coverage for the damages sought by the Ritzes;
>
> Declare that the Westfield policy issued John C. Wells and Karen Wells does not require Westfield to defend John Wells or Karen Wells, and does not provide coverage for the damages sought by the Ritzes;
>
> Afford such further relief as the Court deems just and proper.

**WESTFIELD INSURANCE COMPANY DEMANDS A TRIAL BY JURY ON ALL FACTUAL ISSUES, IF ANY.**

WESTFIELD INSURANCE COMPANY,

By counsel,

Date: December 21, 2017

*/s/Dara A. DeCourcy*
George N. Stewart, Esquire
(WV I.D. No. 5628)
Dara A. DeCourcy, Esquire
(WV I.D. No. 7034)
ZIMMER KUNZ, PLLC
132 South Main Street; Suite 400
Greensburg, PA 15601
(724) 836-5400
stewart@zklaw.com
decourcy@zklaw.com